THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY SYKES, Defendant-Appellant.

Fourth District    No. 4—86—0327

Opinion filed March 3, 1987.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

After a jury trial, defendant was convicted of cruelty to children in violation of section 53 of "An Act relating to improper supervision of children" (the Act) (Ill. Rev. Stat. 1985, ch. 23, par. 2368) and battery in violation of section 12—3 of the Criminal Code of 1961 (the Criminal Code) (Ill. Rev. Stat. 1985, ch. 38, par. 12—3). The circuit court of Macon County vacated the conviction for battery at a hearing on the post-trial motion. Defendant was then sentenced to a term of 16 months' imprisonment on the charge of cruelty to children. Defendant appeals his conviction. We affirm.

On appeal, defendant alleges three errors: (1) whether defendant was properly convicted of cruelty to children and battery, where no permanent physical damage to the victim resulted; (2) whether the trial court erred in admitting violent behavior of the defendant demonstrated against someone other than the victim, and (3) whether the trial court erred in refusing to instruct the jury concerning which exhibits had been admitted and which had been refused.

Defendant was arrested on December 28, 1985, after an incident which occurred at his home. Defendant lived in Decatur with his wife, Ada Sykes, and her two daughters from a previous marriage. The oldest child, B.J.G., was about two years old at the time of the incident. B.J.G. was the subject of defendant's alleged abuse. The family lived in a mobile home.

Ada testified at trial. She stated that on December 28, 1985, she put her daughters to bed at approximately 1:30 p.m. Shortly after that time, B.J.G. got up and was in the bathroom playing. Defendant went to use the bathroom. He picked the girl up with one arm and "pushed her into a bunk bed." Ada and defendant then argued over defendant's treatment of B.J.G. Ada went outside to her car to let defendant cool off. From her car, she could hear defendant yelling at the child, and she heard B.J.G. "scream that [sic] I never heard out of her before."

Defendant came out of the trailer and ordered Ada out of the car. She said no. He picked up a piece of wood—a 1 by 6 or a 2 by 4—and approached the car. Ada testified that defendant never hit the car, but that she had gotten out. Defendant then used the car to run an errand for his mother.

About 3:55 p.m., B.J.G. got up from her nap, and Ada began giving her a bath. Ada testified that she noticed the area around the girl's right ear was bruised. Ada then called her mother, and her mother said she would be right over. Ada went back to bathing B.J.G. and noticed marks about the left ear. She also noticed two little

"knots" on the top of the girl's forehead. She then called the police.

After the police arrived, Ada made her complaint and took B.J.G. to the hospital. At the hospital, Ada was told that B.J.G. was OK; she was just bruised.

On cross-examination, Ada stated that defendant was a real good father to both children. She also stated that she did not see defendant do anything that "actually caused any harm" to B.J.G. Defendant was expected to take an active role in disciplining the children.

On redirect examination, the State's Attorney asked several questions regarding Ada's previous responses to his questions. He questioned Ada as to whether or not she had told the officer that defendant hit her car with the 2 by 4.

Police officer David Barringer testified that he went to the Sykes' home on December 28, 1985, in response to Ada Sykes' phone call. When Barringer arrived, Ada asked to talk with him alone. After their conversation, Barringer examined B.J.G. for marks and bruises. He noticed a red mark across her left eye. It appeared that a blood vessel was broken in her left eye. He also noticed two red marks on her scalp, a red mark on her temple, and a red mark on her forehead. Her ears were a dark red color. He then interviewed defendant. According to Barringer, defendant told him that defendant struck the child in the face with a piece of cardboard from a coat hanger about five to six times. Defendant also told Barringer that he was playing with B.J.G. and did not intend to hurt her.

Auxiliary police officer Chris Peters accompanied Officer Barringer to the Sykes' mobile home on December 28. His testimony corroborated Barringer's statements regarding the interview with defendant. According to Peters, defendant told Barringer that he was playing with B.J.G., using the cardboard to tap her about the head and ears.

Police officer Douglas Raver, a juvenile officer, also testified for the State. He met Ada and B.J.G. at Decatur Memorial Hospital and took photographs of the child's bruises. At trial, Officer Raver described in detail the marks and bruises depicted in the photographs.

Raver further testified that he talked with Ada Sykes on December 28. According to Raver, Ada stated that when defendant approached the car with the 2 by 4, he beat the windows of the car. At that point, she left the car in order to prevent him from breaking the windows. The court instructed the jury that Raver's recollection of this conversation with Ada was limited to impeaching her earlier testimony.

Finally, the State called police officer Roger Ryan. He interviewed

defendant on December 29, 1985, about the December 28 incident. According to Ryan, defendant stated that he had an argument with Ada that day. Later on, B.J.G. was attempting to climb down the ladder from her bunk bed. He stated he struck B.J.G. with a teddy bear. He grabbed her by the arm and shoved her back in bed. He then picked up a length of cardboard from a coat hanger and struck B.J.G. about the face and side of her head about four or five times. He stated his intention was to punish B.J.G. for climbing out of bed and not to intentionally harm her. Defendant told Raver that when he went outside, he struck the car in which his wife was sitting with a 2 by 4 in order to get her out.

The trial court heard arguments on the admission of the State's exhibits outside the presence of the jury. After both sides had rested, the court heard arguments on which exhibits should be submitted to the jury, again outside the jury's presence. Defense counsel requested the court to advise the jury on which exhibits were admitted and which were refused. The court denied the request. The jury found defendant guilty on both charges. Defendant filed a timely notice of appeal.

■ In regard to the first alleged error, defendant essentially argues that he cannot be guilty of the offense of which he was convicted as the child recovered from the bruises and marks left on her body. The offense of cruelty to children, found in section 53 of the Act (Ill. Rev. Stat. 1985, ch. 23, par. 2368), provides, in pertinent part:

"Any person who shall *** in any *** manner injure in health or limb, any child, apprentice or other person under his legal control, shall be guilty of a Class 4 felony."

The offense of battery found in section 12–3 of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 12–3(a)), of which defendant was also convicted, provides, in pertinent part:

"(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual ***."

Defendant points to the fact that B.J.G. was examined at a hospital and released without receiving treatment. Also, no medical personnel testified at trial. The child's injuries were limited to bruises and red marks. Defendant contends that these injuries do not constitute "personal injury" for purposes of the cruelty-to-children statute or "bodily harm" for purposes of the battery statute.

We do not accept defendant's argument. In *People v. Johnson* (1985), 133 Ill. App. 3d 881, 479 N.E.2d 481, the court upheld a conviction for cruelty to children despite the fact that the child received

no permanent scars. The defendant, in that case, had beaten his two sons with an extension cord. The younger son, nine years old, had two red marks visible on his back some 12 hours after the beating. The boy testified his back felt bad afterwards and felt worse the next day. The court upheld the conviction because the use of an extension cord as a whip was vicious and unreasonable. The court stated the whipping "exceeded the reasonable bounds of force permitted a parent in disciplining his child." 133 Ill. App. 3d 881, 885, 479 N.E.2d 481, 484.

In the present case, B.J.G. was beaten about the upper body with a piece of rolled cardboard from a coat hanger. Three police officers testified to the bruises and red marks they saw on the girl. At the time, B.J.G. was two years old. She is too young to testify, but Ada testified that she heard the child scream like "I never heard out of her before." The beating of this girl was clearly beyond "the reasonable bounds of force for discipline." (See *People v. Johnson* (1985), 133 Ill. App. 3d 881, 479 N.E.2d 481.) We find no error with defendant's conviction for cruelty to children.

Because we hold the defendant's actions constituted cruelty to children, we need not decide whether they also constituted the crime of battery, the offense which was vacated by the trial court.

■ Defendant next argues that the trial court erred in admitting evidence of defendant's violent behavior towards Ada.

Ada Sykes testified about defendant's behavior immediately after he beat B.J.G. Defendant and Ada were having an argument on the day of the incident. In order to allow defendant to "cool off," Ada went outside and locked herself in her car. At this time, defendant was apparently beating B.J.G. Defendant thereafter came outside and tried to get his wife to leave her car. Ada testified that he approached the car with a 2 by 4 but that he never hit the car. Ada was asked, on redirect examination. whether she recalled telling a different version to police officers. The State was allowed to impeach Ada's testimony through the testimony of two police officers. Officer Raver testified that, in a conversation with Ada after the incident, Ada told him that defendant had beat the windows of the car to get her to come out. Officer Ryan testified that he interviewed defendant the day after the incident, and defendant told him he beat the windows of the car.

Defendant contends that this impeachment was irrelevant to the charges against him. In allowing this testimony, defendant states he was greatly prejudiced. It inferred that defendant had a violent nature which manifested itself against B.J.G.

The rule is stated in *People v. Collins* (1985), 106 Ill. 2d 237, 478

N.E.2d 267, that impeachment of a witness on a collateral matter is not allowed. The supreme court also stated that the test to determine if a matter is collateral is whether the matter could be introduced for any purpose other than to contradict. The application of this test is best left in the discretion of the trial court. 106 Ill. 2d 237, 269-70, 478 N.E.2d 267, 281.

Defendant cites *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734, for support in arguing the admission of irrelevant evidence mandates a new trial. In *Harbold,* the State's Attorney elicited testimony about a gun found in defendant's house which was not in the vicinity of the crime scene. Moreover, the victim had been stabbed to death. The intent of the State was to show the nature of defendant's character. In *Harbold,* the evidence was irrelevant as it did not relate to the stabbing death.

■ In the instant case, the evidence of defendant's actions outside the trailer were relevant to the crimes of which he was charged. The evidence shows that Ada and defendant argued over defendant's treatment of B.J.G. Ada went outside, getting into her car, in order to let defendant "cool off." From her car, she could hear B.J.G. scream from being beaten. Moments later, defendant emerged and beat on the windows of the car with a 2 by 4 in order to get Ada out of the car. The evidence is relevant to show the enraged condition of the defendant at the time the crimes were committed, and it directly contradicts any notion that defendant was merely disciplining the child or playfully tapping the girl with the cardboard. It was, therefore, not a collateral matter.

■ Defendant next argues that the trial court erred in not instructing the jury as to which exhibits were admitted and which were not. In particular, defendant is concerned about People's exhibit Nos. 5, 7, and 12, which were not admitted into evidence.

Exhibit Nos. 5 and 7 are pictures of the upper torso and face of B.J.G. In addition to showing the bruises about the girl's face and head, they show an elbow scrape and a scar around the abdomen. In describing these photographs to the jury, the officers pointed out the elbow scrape and scar. The two investigating officers, Barringer and Peters, stated they had not previously seen the scar as B.J.G. had a shirt on at the trailer. Mary Jane Campbell, Ada's mother, testified that the scar was from a surgery the child had undergone. Officer Raver stated on cross-examination that the elbow scrape was not necessarily indicative of child abuse.

Exhibit No. 12 was a full-length coat hanger used as a demonstrative exhibit. Officer Raver was asked to compare exhibit No. 12 to ex-

hibit No. 1, which was shorter. The purpose was to create the inference that defendant had broken the cardboard against B.J.G.'s body with the force he used to beat her.

Defendant argues the failure to give a limiting instruction was error as the jury was allowed to speculate regarding the elbow scrape and the scar. Also, defendant contends the jury was left to speculate as to whether the defendant used the entire coat hanger or just the cardboard.

We find no abuse of discretion in failing to give a limiting instruction. The jury was given Illinois Pattern Jury Instruction, Criminal, No. 1.01 (2d ed. 1981), which reads, in pertinent part:

> "The evidence which you should consider consists only of the testimony of the witnesses [and the exhibits] which the court has received."

The jury was not allowed to take these three exhibits with them to the jury room. The testimony of the witnesses was not unclear so as to prejudice the defendant.

For the foregoing reasons, the order of the circuit court of Macon County is affirmed.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.